## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

**MONICA CALLIER,** an individual,                    Case No.

     Plaintiff,                                        Hon.

v.

**MAURIZIO LOGIUDICE,** an individual,
**GIOVANNA LOGIUDICE,** an individual, and
**MANDY TITHOF,** an individual,

jointly and severally,                              **TRIAL BY JURY DEMANDED**

     Defendants.

_____

### CLASS ACTION COMPLAINT PURSUANT TO THE
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

*There is a pending civil action arising out of some of the
facts alleged in ther Complaint - Case No. 18-CV-804.*

     NOW COMES the Plaintiff, by and through her attorneys at Avanti Law Group, PLLC, and in her original Complaint brings this civil action pursuant to **Racketeer Influenced and Corrupt Organizations Act** (hereinafter "RICO"), 18 U.S.C. 1961 et seq., on her own behalf and on behalf of a class of individuals who were similarly injured by Defendants' violations of the RICO. Plaintiff complains that the Defendants Maurizio LoGiudice ("Maurizio"), Giovanna LoGiudice ("Giovanna") (together "Racketeer Defendants") operated a **criminal enterprise** engaged in a pattern of racketeering activity, including Wire Fraud and Mail Fraud, involving numerous RICO predicate acts, all in an effort to: 1) defraud the state and federal tax authorities (**TAX EVASION SCHEME**) as well as to 2) defraud Plaintiff and the members of the class of their wages (**WAGE THEFT SCHEME**) and 3) defraud their worker's compensation insurance carrier (**WORKERS COMPENSATION INSURANCE SCHEME**). Racketeer Defendants systematically and continuously, over the last ten (10) years and more, have conducted a corrupt enterprise in violation of the RICO Act, all acts of which are continuing in nature. Racketeer Defendants together with and Mandy Tithof ("Mandy"), conspired to violate the RICO. Plaintiff and members of the class were injured as a result of the Racketeer Defendants' schemes to defraud and their conspiracy to violate the RICO. Plaintiff seeks a declaration that her rights, as well as those of the class, have been violated and that she and members of the class be awarded damages for Defendants' unlawful conduct. In support of her claim he states as follows:

## PARTIES

1. Plaintiff Monica Callier is a resident of the County of Ottawa, state of Michigan.

2. Defendant Maurizio LoGiudice (hereinafter referred to as "Maurizio") is one of two co-owners of Vitale's Pizzeria of Hudsonville, LLC.

3. Defendant Maurizio is responsible for the day-to-day operations of Vitale's Pizzeria of Hudsonville, LLC located at 5779 Balsam Dr. Hudsonville, Michigan 49426 (hereinafter referred to as "Vitale's of Hudsonville") as well as the creation, enactment, and implementation of company wide policies. *Exhibit A, LARA Entity Search.*

4. Defendant Giovanna LoGiudice (hereinafter referred to as "Giovanna") is one of two co-owners of Vitale's Pizzeria of Hudsonville, LLC, as well as the wife of Defendant Maurizio.

5. Defendant Mandy Tithof (hereinafter referred to as "Mandy") is the general manager of Vitale's Pizzeria of Hudsonville, LLC and responsible for payroll and processing.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a) (RICO).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the actions and omissions giving rise to the claims pled in ther Complaint occurred in ther District.

## GENERAL ALLEGATIONS

8. Plaintiff has worked at Vitale's of Hudsonville from July 27, 2011 until October 2017.

9. Plaintiff worked as a server and bartender at the time of her hire until approximately October 2015.

10. In addition to her bartender title, Plaintiff was given the title of Front of the House Manager from October 2015 until the end of her employment with Defendants.

11. Vitale's of Hudsonville is capable of holding a legal or beneficial interest in property.

12. Defendant Maurizio set the terms and conditions of Plaintiff's employment at Vitale's of Hudsonville.

13. Defendant Maurizio told Plaintiff that she was to be compensated on an hourly basis but would not be paid an overtime premium for any hours worked in excess of forty hours per week.

14.     When Plaintiff asked about overtime, Defendant Maurizio stated that he was not obligated to pay overtime because he owned a small business.

15.     During her employment at Vitale's at Hudsonville, Plaintiff was compensated as follows;

   a.   As a server, Plaintiff was compensated in the amount of $4.00 per hour for the whole duration of her employment.

   b.   As a bartender, Plaintiff was compensated in the amount of $4.00 per hour for the whole duration of her employment.

   c.   As a manager, Plaintiff was compensated in the amount of $13.00 per hour. At the end of her employment Plaintiff was compensated in the amount of $15.00 per hour.

16.     Defendant Giovanna and Defendant Mandy set Plaintiff's work schedule at Vitale's of Hudsonville.

17.     In order to track her time, Plaintiff input her hours into a Future brand Point of Service ("POS") system, which automatically internally change to reflect different hours that those actually worked.

18.     Defendant Mandy would then send the first forty (40) hours worked for employee to the payroll company PayCor to process weekly payroll checks.

19.     Defendant Mandy would then write down the difference between the total hours worked, and the hours worked that were sent to payroll in a paper log.

20.     Defendant Mandy would then use the difference above to calculate the amount of cash owed to employees.

21.     Finally, Defendant Mandy would distribute the cash to Plaintiff and other workers.

22.     Defendant Maurizio and Defendant Giovanna required and instructed Defendant Mandy to only send forty (40) hours to PayCor and to distribute the rest of pay in cash.

23.     All payments administered to Plaintiff and class members were for straight time, regardless if they worked over forty (40) hours or not.

24.     Throughout Plaintiff's entire employment with Defendants, this system was used to pay Plaintiff and class members.

25.     Defendant Maurizio and Defendant Giovanna were and are responsible for the day to day operation of Vitale's of Hudsonville and were and are directly involved in the decisions regarding the recruitment, hiring, work duties, scheduling and compensation of Plaintiff and class members.

26. Defendant Maurizio was and is responsible for the creation, implementation, and enforcement of company wide policies and practices.

27. Defendant Giovanna was and is similarly responsible for decisions related to hiring, firing, compensation, scheduling and work duties of Plaintiff and the class members.

28. Defendant Giovanna and Defendant Mandy were and are responsible for payroll, verifying time cards, and conveying information to the company's accountant and workers' compensation insurance agent.

29. Defendant Maurizio and Defendant Giovanna directed Defendant Mandy to implement this policy of only distributing payments over forty (40) hours in cash straight time.

30. Defendant Mandy issued the workers their payroll checks *and* also issued the workers the payment in cash.

    a. Specifically, she would pay the first forty (40) hours by way of direct deposit or check.

    b. She would pay all other hours after forty (40) hours by way of cash.

31. Defendant Maurizio and Defendant Giovanna were fully aware of the hours worked by Plaintiff and the class members.

## Tax Evasion Scheme

32. Racketeer Defendants devised a scheme, hereinafter known as the "Tax Evasion Scheme," with the goal of defrauding the state and federal tax authorities in order to avoid paying the requisite tax withholdings.

33. Defendant Maurizio and Defendant Giovanna benefitted from the Tax Evasion Scheme by realizing more profits than what they would have without the scheme as follows:

    a. They did not pay the required withholdings to the tax authorities on the cash payments made to Plaintiff and the class members for the hours recorded and paid in cash;

    b. They were able to lessen their taxable income by not properly reporting the cash payments to the tax authorities.

34. As a result of these schemes against the tax authorities, Plaintiff and the class were economically harmed by exposure to tax liabilities and penalties.

35. Racketeer Defendants' nonpayment of withholdings also lessened Plaintiff and class members' future social security benefits.

36. Racketeer Defendants' Tax Evasion Scheme would require the Plaintiff and the class members to only get paid by check or direct deposit for the first forty (40) hours worked,

to reflect that Plaintiff and class members were working no more than forty (40) hours a week.

37.    Racketeer Defendants would then require Defendant Mandy to  keep the other hours worked beyond (40) hours off the books and pay Plaintiff and class members in cash for all hours worked after forty (40).

38.    The hours paid by the Racketeer Defendants after the first forty (40) hours were paid on a straight time basis - no time and half premium was paid for those hours.

39.    Cash payments were distributed weekly at each restaurant location.

40.    On approximately September 2015, Plaintiff informed Defendant Maurizio that the policy of paying in cash and not reporting her whole income was impacting her negatively.

41.    Defendant Maurizio informed the Plaintiff that the policy used above is the policy and procedure of the business and that he would not change it.

42.    Defendants' use of the Tax Evasion Scheme was an effort to defraud Federal and State tax authorities and entities so as to not pay the requisite withholding taxes required on the cash payments not reported for all hours after forty (40).

43.    By using direct deposit, Racketeer Defendants used an interstate wire communication to further their scheme.

44.    Racketeer Defendants used the United States Postal Service to further their scheme by sending incorrect and/or fraudulent wage statements to the Plaintiff and the class members.

45.    By submitting time derived from the fraudulent system to calculate wages to Defendants' payroll service, Racketeer Defendants used an interstate wire communication to further their scheme.

46.    By incorrectly reporting their total income, tax withholdings, and total wages paid to their employees, Racketeer Defendants committed wire and/or mail fraud to further their scheme as follows:

   a.    Racketeer Defendants were required to submit a UIA 1028 to the state of Michigan quarterly every year pursuant to 29 U.S.C. § 49(c) (incorporated in state law as Michigan Compiled Laws 421.1 *et seq.*) These communications are due each year on April 25, July 25, October 25, and January 25. On these tax forms, they would file with the Michigan Unemployment Insurance Agency ("UIA") via Michigan Web Account Manager ("MiWAM") website or via U.S. Mail with the total number of wages earned from all employees that formed the basis for calculating their unemployment tax. The numbers reported on these forms did not include the wages paid via cash and therefore, were meant to defraud the state of Michigan into lessening Defendants' tax burden. Each year since the inception

and implementation of the Tax Evasion Scheme, Defendants would commit four (4) instances of wire and/or mail fraud per year.

b. Racketeer Defendants were required to submit a Federal 941 form pursuant to 26 U.S.C. § 6011 *et seq.* Employers are required to make contributions in the amount of 6.2% of total wages paid to employees pursuant to 26 U.S.C. § 3111. These documents were communicated to the IRS and contained, *inter alia*, a report of the number of all employees employed by the Racketeer Defendants and total wages paid to the same. These documents were used to ascertain, based on total wages, what amount of money Racketeer Defendants needed to contribute to the IRS. These documents were filed with the IRS quarterly. These documents were either mailed using the U.S Postal Service or filed electronically. Each time ther document was communicated with the incorrect/fraudulent wages obtained through Racketeer Defendants' fraudulent Tax Evasion Scheme constituted a count of mail and/or wire fraud. Racketeer Defendants would commit four (4) instances of wire fraud per year.

## Wage Theft Scheme

47. Racketeer Defendants' practice of not reporting hours worked after the first forty (40) was also intended to defraud Plaintiff and class members of their overtime premium pay for all hours worked over forty (40).

48. Racketeer Defendants devised this Wage Theft Scheme intentionally to defraud Plaintiff and class members of their proper wages.

49. Defendants were responsible for implementing the Wage Theft Scheme and directed Defendant Mandy to enforce it as to the Plaintiff and class members working at Vitale's of Hudsonville.

50. Racketeer Defendants and Defendant Mandy would communicate or cause communication with the individual financial institutions of the Plaintiff and class members in the times stated below. Racketeer Defendants and Defendant Mandy would communicate fraudulent deposits that did not accurately depict monies earned in full.

51. The deposits communicated contained dollar amounts that were incorrect/fraudulent and which were a result of Racketeer Defendants' Tax Evasion Scheme and therefore contained dollar amounts meant to defraud federal and state tax entities.

52. Each time a direct deposit was made, there was an act of wire fraud.

53. Racketeer Defendants also mailed the wage statements to Plaintiff and the class members every other week at the end of the pay period.

54. Those wage statements were incorrect/fraudulent as they contained amounts that were for less than the amount owed and/or paid to each Plaintiff and/or class member.

55.  The wage statements were incorrect/fraudulent as they contained amounts that were based on the Racketeer Defendants' Tax Evasion Scheme.

56.  Racketeer Defendants were required to mail out a IRS W-2 form to the Plaintiff and class members each year.

57.  By using the post office to mail out W-2s to Plaintiff and class members, Defendants used the mail in furtherance of their scheme.

58.  Each time Racketeer Defendants mailed a W-2 to Plaintiff and class members, ther constituted an act of mail fraud

59.  Racketeer Defendants' policy of keeping hours worked after (40) off the books and paid in cash was for the purpose of circumventing Racketeer Defendants' obligations under the various tax codes as well as their obligations under the FLSA.

60.  Racketeer Defendants failed to properly pay the Plaintiff and the class members as required in order to realize a financial gain.

61.  Racketeer Defendants utilized their unlawful policy in order to implement and further their fraud against the Plaintiff and class members.

### Worker's Compensation Insurance Scheme

62.  Racketeer Defendants devised a scheme, hereinafter known as the "Worker's Compensation Insurance Scheme", with the intended goal of defrauding their Worker's Compensation Insurance carrier by submitting fraudulent wage amounts to their carrier which was then relied upon and used to calculate their insurance premiums.

63.  Defendants benefitted from the Worker's Compensation Insurance Scheme by realizing more profits than what they would have without the scheme as follows:

     a.  They did not report the cash payment wages made to Plaintiff and the class members for the hours recorded on the second timecards;

     b.  They were able to lessen their total wages reportedly paid to their Worker's Compensation Insurance company by not properly reporting the cash payments and/or total wages paid to their employees to their carrier.

     c.  This resulted in the insurance premiums being based on fraudulent information which resulted in a lower premium charged to the Racketeer Defendants.

64.  As a result of accomplishing the goals of the scheme to defraud and in furtherance of this scheme, Racketeering Defendants paid workers in cash for part of their hours worked.

65.  Racketeer Defendants' unlawful policy would require the Plaintiff and the class members get paid for the first forty (40) hours worked by check or direct deposit to reflect that Plaintiff and class members were working no more than forty (40) hours a week.

66.   Racketeer Defendants would then require Defendant Mandy to keep hours worked by Plaintiff and class members in excess of forty (40) hours per week off their books by paying Plaintiff and class members in cash for all hours worked.

67.   Cash payments were distributed weekly on restaurant location.

68.   Defendants' unlawful policy was an effort to defraud their Worker's Compensation Insurance carrier so as to not pay the high premiums by failing to report the cash payments made to Plaintiff and class members for the hours recorded on the second timecard.

69.   By reporting the fraudulent wage amounts to their insurance carrier, Racketeer Defendants used an interstate wire communication to further their scheme.

70.   By incorrectly reporting their total income, tax withholdings, and total wages paid to their employees, Racketeer Defendants committed wire and/or mail fraud to further their scheme as follows:

   a.   Racketeer Defendants were required to obtain and maintain insurance for Workers Disability Compensation Act claims pursuant to M.C.L. 418.301 *et seq.* These documents typically contain a wage breakdown. These documents are in the exclusive control of Racketeer Defendants and/or their insurance company and are easily discoverable via subpoena to the insurance company. Every instance these documents were communicated to the insurance company with the incorrect/fraudulent wages obtained through Racketeer Defendants' fraudulent Tax Evasion Scheme constitute a count of mail and/or wire fraud. Depending on discovery obtained, Racketeer Defendants would commit at least one (1) instance of wire fraud per year.

71.   Plaintiff and the class members were harmed by the natural and obvious consequence of implementing and furthering the scheme.

72.   In order to implement the scheme, Racketeer Defendants had to lower the amount of wages reported to their worker's compensation insurance agent.

73.   The unlawful policy was the means to further the scheme's goal.

74.   As a result of Racketeer Defendants' scheme, Plaintiff and class members each were harmed by the Racketeer Defendants' failure to report their full wages paid and by failing to withhold the required taxes from their wages.

75.   As a result of this scheme, Plaintiff and the class were economically harmed by exposing them to tax liabilities and penalties.

76.   Racketeer Defendants' nonpayment of withholdings also lessened Plaintiff and class members' future social security benefits.

## RICO ENTERPRISE

77. Plaintiff is a "person" as within the meaning of 18 U.S.C. § 1964(c).

78. Each individual Defendant is a "person" within the meaning of 18 U.S.C. § 1964(c).

79. Plaintiffs and the Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3).

80. Defendant Maurizio, Defendant Giovanna, the payroll company for Vitale's of Hudsonville, the accountant for Vitale's of Hudsonville, Vitale's of Hudsonville, and Defendant Mandy carried out their racketeering activity through an association- in- fact "enterprise" (the `Enterprise"), as the term is defined in 18 U.S.C. § 1961(4).

81. The legal entities were used for illegal purposes by the unofficial, corrupt "enterprise."

82. Although all Racketeer Defendants participated in the Enterprise and were a part of it, they each also have an existence separate and distinct from the Enterprise.

83. The common purpose of the enterprise was to defraud money from the state and federal tax authorities, Plaintiff and class members, as well as the worker's compensation insurance companies in order to realize a greater financial benefit for the Racketeer Defendants.

84. Through the criminal fraud schemes described above, the Racketeer Defendants knowingly, and with specific intent to profit, operated and managed the enterprise through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c).

85. Defendant Maurizio and Defendant Giovanna conspired together and with Defendant Mandy in order to further the schemes described above in violation of RICO, 18 U.S.C. § 1962(d).

86. This pattern of illegal activities committed by the Defendants, the "Predicate Acts," discussed below, were done with the purpose of financial gain/benefit and were done within the past ten (10) years and are continuing.

87. By the acts alleged herein, Defendants, each and every one of them, jointly and severally, have aided and abetted and conspired to violate the law, through their ongoing criminal enterprise as set forth below.

88. The Defendants each intended the natural and obvious results of their actions.

## PREDICATE RACKETEERING ACTS

89. In order to perpetrate their criminal fraud scheme, Defendants knowingly and willfully committed the following predicate racketeering offenses of Mail and Wire fraud under RICO.

90. The predicate acts were not isolated events, but were related acts aimed at the common purpose and goal of defrauding the tax authorities, the Plaintiff and class members and their insurance carriers for profit.

### *Predicate Criminal Violations of Federal Mail Fraud Statute, 18 U.S.C. § 1341*

91. The Racketeer Defendants could be charged and convicted of multiple, related violations of law which form a pattern and practice and which violations are each potentially punishable by more than one year in jail constituting mail fraud.

92. Racketeer Defendants acted in criminal violation of the federal mail fraud statute under 18 U.S.C. § 1341. 18 U.S.C. § 1341 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

93. Racketeer Defendants knowingly used the mail with the specific intent of executing and furthering this fraudulent scheme, in violation of 18 U.S.C. § 1341.

94. Racketeer Defendants' use of the mail postal service was incident to an essential part of the scheme to defraud, namely to deceive and/or defraud the tax authorities, the Plaintiff and class members and their insurance carriers.

95. Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from state and federal tax authorities.

96. Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money from Plaintiff and class members by not paying them their proper wages when due.

97.  Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from their worker's compensation insurance companies.

98.  Racketeer Defendants intentionally used the mail to send W-2s and paychecks to Plaintiff and class members derived from Racketeer Defendants' unlawful policy in order to defraud Plaintiff and class members of their appropriate pay with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1341 during her employment at Vitale's of Hudsonville.

99.  Racketeer Defendants intentionally and with full knowledge of their actions and the natural consequences of those actions used the mail to send Plaintiff and similarly situated W-2s and their paychecks which contained fraudulent figures of underpaid withholdings and unpaid wages due to Defendants' unlawful policy in order to defraud Plaintiff of overtime compensation and social security and other withholdings and also the state and federal tax authorities of collectable taxes with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1341.

100.  In order to achieve or attempt to achieve the fraud described in the preceding paragraphs, Racketeer Defendants sent correspondence and other documents that were sent or delivered by the Postal Service.

### Predicate Criminal Violations of Federal Wire Fraud Statute, 18 U.S.C. § 1343

101.  The Racketeer Defendants could be charged and convicted of multiple, related violations of law which form a pattern and practice and which violations are each potentially punishable by more than one year in jail constituting wire fraud.

102.  Defendants further acted in criminal violation of the federal wire fraud statute under 18 U.S.C. 1343. 18 U.S.C. § 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

103.  Racketeer Defendants knowingly used the interstate wire communication with the specific intent of executing and furthering this fraudulent scheme, in violation of 18 U.S.C. § 1343.

104.  Racketeer Defendants' use of wire communication was incident to an essential part of the scheme to defraud, namely to deceive and/or defraud the tax authorities, the Plaintiff and class members and their insurance carriers.

105.   Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from state and federal tax authorities.

106.   Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money from plaintiff and class members by not paying them their proper wages when due.

107.   Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from their worker's compensation insurance companies.

108.   Racketeer Defendants transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice when they transmitted telephone and cellular telephone calls, documents, facsimiles, emails, instant messages, and any other form of communication.

109.   Racketeer Defendants intentionally used interstate wire communications to deposit funds and file tax documents with various tax agencies derived from their unlawful policy in order to defraud Plaintiff and class members of their appropriate pay with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1343 during her employment at Vitale's of Hudsonville.

110.   In order to achieve or attempt to achieve the fraud described in the preceding paragraphs, Racketeer Defendants sent correspondence and other documents that were sent or delivered by the Postal Service.

## PATTERN OF RACKETEERING ACTIVITY

111.   The predicate acts of criminal racketeering activity described above constitute a "pattern of racketeering activity" as defined by RICO, 18 U.S.C. § 1961(5). As described above, Racketeer Defendants repeatedly committed the predicate acts over a period of several years. In addition, Racketeer Defendants repeatedly engaged in unlawful acts to further their criminal scheme upon the Plaintiff and class members.

112.   Defendant Maurizio and Defendant Giovanna, willingly, and with full knowledge of her actions and the natural and obvious consequences of those actions, conspired with Defendant Mandy to further the enterprise and assist him in committing a pattern of racketeering activity.

113.   The predicate acts of criminal racketeering activity described above were related in at least the following ways:

   a.   They had common participants;

   b.   They each had the same victims, namely the Plaintiff and class members, as well as the government tax entities and insurance companies;

c. They each had the same purpose of defrauding government entities, their employees and their insurance carriers for the benefit of the Racketeer Defendants and at the expense of Plaintiff and class members;

d. They each accomplished this purpose through their unlawful policy of paying cash to their employees after every hour worked over forty (40);

e. They were interrelated in that without the acts of mail fraud and wire fraud, the Racketeer Defendants would not have been able to exploit Plaintiff and class members and deprive them of their rights and property.

114. Such acts of racketeering activity have been part of the Defendants' regular way of doing business through the enterprise(s) described above for at least ten years and has continued through at least the termination of Plaintiff in October of 2017.

115. Throughout the relevant time period, each Racketeer Defendant were a culpable "person" as defined by RICO, 18 U.S.C. § 1961(3).

## RULE 23 CLASS ALLEGATIONS

116. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of all similarly situated current and former employees of Racketeer Defendants who are or were employed at any time in the last four years. Plaintiff proposes the following class definition:

> **All current and former employees of Vitale's restaurant located in Hudsonville that were paid in cash.**

Plaintiff reserves the right to amend the putative class definition if necessary.

117. Plaintiff shares the same interests as the putative class and will be entitled under the RICO to treble damages, attorneys' fees, and costs owed to them under nearly identical factual and legal standards as the remainder of the putative class.

118. The putative Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendants employed dozens if not hundreds of workers. The Class members are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendants' personnel, scheduling, time, phone, and payroll records, and from input received from the putative Class members.

119. The putative Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendants engaged in a common course of conduct that violated the legal rights of Plaintiff and the Class. Individual questions that Plaintiff claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

a. Whether Defendants engaged in a policy or practice of keeping hours worked after forty (40) off the books and only administered straight time cash payments for all hours worked after forty (40) worked by the Class;

b. Whether Defendants engaged in a scheme to defraud state and federal tax authorities;

c. Whether Defendants engaged in a scheme to defraud the Class of their wages;

d. Whether Defendants engaged in a scheme to defraud their worker's compensation insurance carrier;

e. Whether the Defendants engaged in Mail fraud;

f. Whether the Defendants engaged in Wire Fraud;

g. Whether the Class was harmed by the schemes to defraud;

h. Whether the Defendants violated the RICO;

i. Whether the Defendants should be required to compensate the Class with treble damages, attorneys fees and costs for violating the RICO.

120. The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiff and the putative Class members were all employed by Defendants and were all subjected to the same unlawful policy which paid all hours after forty (40) in cash.

121. The Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiff and the putative Class members, and because Plaintiff's attorneys have successfully prosecuted many complex class actions, and will adequately represent the interests of Plaintiffs and the putative Class members.

122. The putative Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

123. The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

124. Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of dozens or even hundreds of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative

Class's claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

## COUNT I
### Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.* MAIL AND WIRE FRAUD OF FEDERAL GOVERNMENT

125.    Plaintiff realleges and incorporates herein all previous paragraphs.

126.    This Count applies to only Defendant Maurizio and Defendant Giovanna.

127.    Vitale's of Hudsonville, is an enterprise engaged in and whose activities affect interstate commerce. Defendant Maurizio, Defendant Giovanna, and Defendant Mandy are employed by or associated with the enterprise.

128.    Defendant Maurizio and Defendant Giovanna associated with an enterprise engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud and wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

129.    Defendant Maurizio and Defendant Giovanna agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff and the IRS. Specifically, any and all instances where a direct deposit was authorized by Racketeer Defendants of the deposit of compensation derived from the unlawful payment policy that did not reflect the total compensation to the rest of the same being distributed via cash. Also any and all instances where Racketeer Defendants communicated with the IRS and represented incorrect tax withholdings due to the unlawful payment policy meant to defraud the same. Further, any and all instances where Defendant sent W-2s to Plaintiff and similarly situated workers that represented incorrect tax withholdings calculated due to the unlawful payment policy meant to defraud the IRS.

130.    As a direct, intended, and foreseeable result of the Defendant Maurizio and Defendant Giovanna's violations of RICO, through the criminal scheme described above, Plaintiff and class members have suffered injury to their property, including the loss of money and exposure to additional tax liability along with fines and interest.

131.    The criminal acts of mail fraud and wire fraud committed by Defendant Maurizio and Defendant Giovanna was directly related to and were substantial factors in causing injury to Plaintiff and class members.

132.    The acts mail fraud and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

133.    Defendant Maurizio and Defendant Giovanna have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

134.    Plaintiff is entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

## COUNT II
## Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.*
## MAIL AND WIRE FRAUD OF STATE GOVERNMENT

135.    Plaintiff realleges and incorporates herein all previous paragraphs.

136.    This Count applies only to Defendant Maurizio and Defendant Giovanna.

137.    Vitale's of Hudsonville is an enterprise engaged in and whose activities affect interstate commerce. Defendant Maurizio, Defendant Giovanna, and  Defendant Mandy are employed by or associated with the enterprise.

138.    Defendant Maurizio and Defendant Giovanna associated with an enterprise engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud and wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

139.    Defendant Maurizio and Defendant Giovanna agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff and the Michigan Department of Treasury. Specifically, any and all instances where a direct deposit was authorized by Defendant Maurizio and Defendant Giovanna of the deposit of compensation derived from the unlawful payment policy that did not reflect the total compensation to the rest of the same being distributed via cash. Also any and all instances where Defendant Maurizio and Defendant Giovanna communicated with the Michigan Department of Treasury and represented incorrect tax withholdings due to the unlawful payment policy meant to defraud the same. Further, any and all instances where Defendant Maurizio and Defendant Giovanna sent W-2s to Plaintiff and similarly situated workers that represented incorrect tax withholdings calculated due to the unlawful payment policy meant to defraud the Michigan Department of Treasury.

140.    As a direct, intended, and foreseeable result of the Defendant Maurizio and Defendant Giovanna's violations of RICO, through the criminal scheme described above, Plaintiff and class members have suffered injury to their property, including the loss of money.

141.    The criminal acts of mail fraud and wire fraud committed by Defendant Maurizio and Defendant Giovanna was directly related to and were substantial factors in causing injury to Plaintiff and class members.

142.    The acts mail fraud and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

143.    Defendant Maurizio and Defendant Giovanna have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

144.    Plaintiff is entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

**COUNT III**

**Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.*
MAIL AND WIRE FRAUD OF PLAINTIFF AND CLASS MEMBERS**

145.    Plaintiff realleges and incorporates herein all previous paragraphs.

146.    This Count applies only to Defendant Maurizio and Defendant Giovanna.

147.    Vitale's of Hudsonville is an enterprise engaged in and whose activities affect interstate commerce. Defendant Maurizio, Defendant Giovanna, and Defendant Mandy are employed by or associated with the enterprise.

148.    Defendant Maurizio and Defendant Giovanna associated with an enterprise engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud and wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

149.    As a direct, intended, and foreseeable result of the Defendants' violations of RICO, through the criminal scheme described above, Plaintiff and class members have suffered injury to their property, including the loss of money.

150.    The criminal acts of mail fraud and wire fraud committed by Defendant Maurizio and Defendant Giovanna was directly related to and were substantial factors in causing injury to Plaintiff and class members.

151.    The acts mail fraud and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

152.    Defendant Maurizio and Defendant Giovanna have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

153.    Defendant Maurizio and Defendant Giovanna have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(d).

154. Plaintiff is entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

**COUNT IV**
**Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.***
**MAIL AND WIRE FRAUD OF WORKER'S COMPENSATION INSURANCE**

155. Plaintiff realleges and incorporates herein all previous paragraphs.

156. This Count applies only to Defendant Maurizio and Defendant Giovanna.

157. Vitale's of Hudsonville is an enterprise engaged in and whose activities affect interstate commerce. Defendant Maurizio, Defendant Giovanna, and Defendant Mandy are employed by or associated with the enterprise.

158. Defendant Maurizio and Defendant Giovanna are associated with an enterprise engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

159. Defendant Maurizio and Defendant Giovanna agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff and their Worker's Compensation Insurance carrier. Specifically, any and all instances where a report was given to Defendants' insurance carrier of compensation derived from the unlawful payment policy that did not reflect the total compensation to the rest of the same being distributed via cash.

160. As a direct, intended, and foreseeable result of Defendant Maurizio and Defendant Giovanna's violations of RICO, through the criminal scheme described above, Plaintiff and class members have suffered injury to their property, including the loss of money.

161. The criminal acts of wire fraud committed by Defendant Maurizio and Defendant Giovanna were directly related to and were substantial factors in causing injury to Plaintiff and class members.

162. The acts of wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

163. Defendant Maurizio and Defendant Giovanna have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

164. Plaintiff is entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

## COUNT V
## Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.*
## CONSPIRACY TO VIOLATE RICO

165.   Plaintiff realleges and incorporates herein all previous paragraphs.

166.   This Count applies to all Defendants.

167.   Defendants conspired by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud Plaintiff and class members.

168.   Defendants conspired by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud the tax authorities.

169.   Defendants conspired by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud their insurance carriers.

170.   Defendant Maurizio and Defendant Giovanna willfully, intentionally and with full knowledge of the actions taken and their natural and obvious consequences conspired with Defendant Mandy to further the criminal schemes outlined above.

171.   Defendants have directly and indirectly participated in the conduct that furthered the schemes of the enterprise affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(d).

172.   Plaintiff is entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

A.   Certifying this action as a class action pursuant to Rule 23(b)(3).

B.   Designating Plaintiff as the representative of the proposed Rule 23 Class;

C.   Appointing Avanti Law Group, PLLC as Class Counsel;

D.   Granting Judgment in favor of Plaintiff against Defendants and award Plaintiff and Class

Members treble compensatory damages for Defendants' violation of RICO;

E.      Award Plaintiff's costs and reasonable attorneys' fees; and

F.      The Court grant such other and further relief as the Court may deem just or equitable.

## JURY DEMAND

NOW COMES Plaintiff, by and through her attorney, and hereby request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: July 19, 2018                    Respectfully Submitted,

*/s/   Robert Anthony Alvarez*            .
Robert Anthony Alvarez (P66954)
Attorney for Plaintiff
Avanti Law Group. PLLC

## VERIFICATION

I declare under penalty of perjury that the statements outlined above in this Original Complaint are true and accurate to the best of my knowledge, information and belief.

Date: _____7/16/18_____          _Monica Callier_

Monica Callier